UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARK AIELLO and CYBER 360, INC., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 23-cv-11930-ADB |
| SIGNATURE COMMERCIAL SOLUTIONS, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Mark Aiello ("Aiello") and Cyber 360, Inc. ("Cyber 360") (collectively, "Plaintiffs")
bring claims against Signature Commercial Solutions, Inc. ("Signature" or "Defendant") related
to Signature's threatened termination of a client contract and employment contracts for a group
of consultants, all of which it purchased from Plaintiffs in 2017.  [ECF No. 1 ("Complaint" or
"Compl.")].  Now pending before the Court is Signature's Motion to Dismiss, [ECF No. 4],
pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the motion
is DENIED.

## I.        BACKGROUND

The following relevant facts are taken primarily from the Complaint and the attachments
thereto, which the Court assumes to be true when considering a motion to dismiss.  Ruivo v.
Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

### A.       Parties and the Asset Purchase Agreement

Aiello is the founder and owner of Cyber 360, a cybersecurity staffing agency.  [Compl.

¶ 8].  Signature is an IT staffing agency.  [Id. ¶ 9].

On March 31, 2017, Plaintiffs and Signature executed an Asset Purchase Agreement

("APA").  [Compl. ¶ 10]; see also [ECF No. 6-1 (APA)].[1]  Under the APA, Plaintiffs agreed,

among other things, to sell or assign to Defendant a number of Cyber 360's staffing contracts

with various customers ("Client Contracts") and employment contracts for the consultants

("Consultants") employed by Cyber 360 and working for those Clients ("Consultant Contracts")

(collectively, "Assigned Contracts").  [Compl. ¶ 11; APA ¶ 2(a)].  In exchange, Signature agreed

to provide to Plaintiffs an upfront payment of $5,000 and additional quarterly payments,

calculated as a percentage of the profit earned from the Assigned Contracts.  [APA ¶ 2(d)(i)].  In

addition, Plaintiffs allege that Signature agreed to "continue to employ the[] . . . [Consultants]

and to pay Plaintiffs the agreed-upon fees until the . . . [Consultants] resigned from their position

with Signature."  [Compl. ¶ 13].

Finally, the APA provides that "[t]his Agreement, including the exhibits and schedules

attached hereto, constitutes the entire agreement between the Parties with respect to the subject

---

[1] Although the APA was not attached to the Complaint, and on a Rule 12(b)(6) motion, courts generally may not consider materials outside the pleadings, Fed. R. Civ. P. 12(d), Plaintiffs concede that the Court may consider it.  [ECF No. 9 at 3]; see also Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) ("[W]hen 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." (quoting Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998))); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) ("Although 'there is no requirement that the pleader attach a copy of the writing on which his action or defense is based[,] . . . when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.'" (quoting 5 Wright & Miller, Federal Practice and Procedure § 1327 at 489 (1969))).

matter hereof and supersedes in its entirety any and all prior agreements between the Parties hereto."  [APA ¶ 8(l)].

### B.    Alleged Breach and Other Alleged Misconduct

After the APA was executed, Signature made the initial $5,000 payment and quarterly payments for "approximately six years."  [Compl. ¶ 14].

 In late 2022 and early 2023, Signature executives approached Aiello about "buying out the remainder of Signature's obligations under the APA" because the current arrangement was no longer financially viable for Signature.  [Compl. ¶¶ 16, 18].[2]  By this time, it appears that there was only one Client Contract under which the transferred Consultants were still doing work.  See [id. ¶ 21].  In June 2023, Signature's Chief Legal Officer informed Aiello that Signature planned to either transfer the remaining Client and Consultant Contracts back to Cyber 360 within six weeks, "or would terminate [the remaining Client Contract], and Plaintiffs would receive no further payments."  [Id.].

During these 2022/2023 discussions, Signature also articulated "new reasons why [it] . . . needed to terminate the [remaining Client Contract], which had [not] been brought to Aiello's attention in the years prior to these conversations."  [Compl. ¶ 24].  "Given Signature's prior repeated statements about the deal no longer making financial sense to Signature," Plaintiffs allege these new reasons are fabricated and pretextual.  [Id. ¶¶ 25, 47].

Plaintiffs argue that the APA prevents Signature from terminating or returning to Plaintiffs the Assigned Contracts, and that Signature must pay the agreed-upon quarterly

---

[2] Signature argues that the Court is barred from considering these and other allegations, pursuant to Federal Rule of Evidence 408(a)(2), [ECF No. 5 at 5–6], which limits the admissibility of evidence of certain "conduct or a statement made during compromise negotiations," Fed. R. Evid. 408(a)(2).  As further discussed below, the Court finds that it may consider these allegations on a motion to dismiss.  See infra.

installments until the employees have "resigned from their position[s] with Signature." [Compl. ¶ 13].

Plaintiffs also allege that Signature has raised issues with the one remaining Client that could lead to the Client terminating the contract, which in turn would "destroy the value of the . . . transferred assets." [Compl. ¶¶ 26–29].

### C.   Procedural History

Plaintiff filed the Complaint in Norfolk Superior Court on June 29, 2023. [Compl.]. Defendant removed the case to this Court on August 23, 2023, [ECF No. 1], and filed the Motion to Dismiss on August 30, 2023, [ECF No. 4]. Plaintiffs opposed the motion on September 13, 2023. [ECF No. 9].

## II.   STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pled facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass 2020) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[,]'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory[,]" Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although detailed

factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

## III.     DISCUSSION

Plaintiffs bring claims for breach of contract, declaratory judgment, and violation of Massachusetts General Laws Chapter 93A.  See generally [Compl.].  The breach of contract and declaratory judgment claims stem from Plaintiffs' allegations that Defendant's threatened termination of the remaining Client and Consultant Contracts in late 2022 and early 2023 violates Defendant's obligation under the APA to not terminate these Contracts until the Consultants resign.  See [id. ¶¶ 13, 15–18, 20–23, 27, 29].  In support of this reading of the APA, Plaintiffs point to a recent email sent by a Signature executive which stated that "the agreement was to continue payrolling . . . [the Consultants] until they roll off" (the "Email").  [Id. ¶ 19].  With regards to their Chapter 93A claim, Plaintiffs also allege that Signature engaged in unfair and deceptive acts and practices, including "fabricating reasons to terminate the [remaining Client Contract] and sabotaging the relationship with the underlying customer [associated with the remaining Client Contract] . . . ."  [Id. ¶¶ 46–47].

### A.     Rule 408

As a threshold issue, Defendant argues that paragraphs 15–21 of the Complaint, which describe the parties' 2022 and 2023 discussions concerning potential termination of the Client and Consultant Contracts as well as the Email, reflect confidential statements that Defendant

made during "pre-litigation settlement discussions" protected by Federal Rule of Evidence 408, and thus they cannot be considered by the Court. [ECF No. 5 at 5]. Plaintiffs respond that these statements arise from "a mere business negotiation" and not from any discussions that would be protected by Rule 408. [ECF No. 9 at 14]. They further aver that this is a discovery issue, and that Rule 408 is inapplicable at the current stage of the proceedings. [Id. at 15].

Rule 408 provides that evidence of "conduct or a statement made during compromise negotiations about the claim" "is not admissible . . . to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). "The court may[, however,] admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

The First Circuit has not articulated a test for determining what constitutes "compromise negotiations" triggering Rule 408 protections, but other circuits have. In the Ninth Circuit, for example, an "existing dispute" is necessary to trigger protections. Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1343 (9th Cir. 1987). In the Eleventh Circuit, statements must be "intended to be part of the negotiations toward compromise" to trigger Rule 408 protections. Blu-J, Inc. v. Kemper. C.P.A. Grp., 916 F.2d 637, 642 (11th Cir. 1990). The Tenth Circuit has held that Rule 408 does not apply until discussions "crystallize[] to the point of threatened litigation." Big O Tire Dealers v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1373 (10th Cir. 1997). In the Third Circuit, a "dispute" between the parties, defined as "a clear difference of opinion," must exist for discussions to be considered compromise negotiations. Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 528 (3d Cir. 1995).

Here, even assuming that Rule 408 can bear on a motion to dismiss, the statements at issue nonetheless do not appear to warrant Rule 408 protections. First, the Complaint makes no reference to compromise or settlement negotiations. See generally [Compl.]. Rather, it states that "Signature began reevaluating the terms of the APA and considered different options," [id. ¶ 15], and then "briefly discussed with Aiello the possibility of buying out the remainder of Signature's obligations under the APA," [id. ¶ 16]. This suggests that the parties were discussing the possibility of entering into a new contract, rather than settling an existing dispute.

Second, the Court may consider statements made during settlement discussions for purposes other than "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). For example, the First Circuit has found that an appropriate purpose for such statements is to determine the parties' understanding of a disputed contract. In Catullo v. Metzner, which involved a lawsuit based on an alleged violation of a prior settlement agreement, and statements made during the negotiations over that settlement agreement, the First Circuit found that

> [t]he situation at bar does not fall within the ambit of Rule 408. Defendant sought to introduce testimony concerning the various subjects discussed during the negotiations to establish the intent of the parties to the agreement. . . . Defendant argues that this testimony was not offered to disprove liability for the original claim settled in the first suit, but rather to prove the terms of the agreement itself . . . . "Where the settlement negotiations and terms explain and are a part of another dispute[,] they must often be admitted if the trier is to understand the case." . . . [Therefore, t]he exclusion of this testimony under Rule 408 was reversible error.

834 F.2d 1075, 1079 (1st Cir. 1987) (internal citation omitted). Similarly here, the Court finds that the statements at issue in paragraphs 15–21 would not be protected by Rule 408 because they concern Plaintiffs' allegations about a threatened breach of the APA and/or the parties' understanding of the APA, and the Court may therefore consider them, at least on a motion to dismiss.

### B.  Duration or Termination of the APA

Defendant argues that all of Plaintiffs' claims must be dismissed because the APA does not require Defendant to continue to service the remaining Client Contract or employ the remaining Consultants until they resign from their positions.  [ECF No. 5 at 4].  Specifically, Defendant asserts that the APA does not contain "any term that commits Signature to [employing the [C]onsultants] until the [C]onsultants choose to resign," and the plain language of the APA shows "that Signature has at all times had the contractual right to terminate any or all of the [C]onsultants 'at any time for any reason.'"  [Id. (emphasis removed)].  Further, according to Defendant, because the APA is fully integrated, its unambiguous terms cannot be varied by extrinsic evidence like the Email.  [Id. at 6].

Plaintiffs concede that there is no express termination or duration provision in the APA, but argue that Defendant's threatened termination of the remaining Client and Consultant Contracts reflects a latent ambiguity in the APA that precludes dismissal.  See [ECF No. 9 at 12–13].  They further assert that the Email is relevant to evaluating the meaning of this latent ambiguity, see [Compl. ¶ 19; ECF No. 9 at 2], and may be considered on a motion to dismiss because it was expressly referenced in the Complaint, [ECF No. 9 at 7].  Although Plaintiffs want the Email considered, they claim that the Court cannot, at this stage of the litigation, consider the documents attached to Signature's motion, which Signature purports to be a subset of the Assigned Contracts.  [Id.].

### 1.  Whether the Court can Consider Documents Attached to Signature's Motion

The Court must first determine whether it can consider the documents attached to Signature's motion.  In arguing that the APA's plain language shows that Signature may terminate any or all of the Assigned Contracts at will (and thus, may stop making quarterly

payments to Plaintiffs, in essence terminating the APA), Signature points to: (1) Section 2(a) of the APA, which conveys to Signature "all of [Plaintiffs'] right, title and interest in, to and under" a set of assets, including the Assigned Contracts, [APA ¶ 2(a)]; and, (2) contracts it purports are a subset of the Consulting Contracts ("Purported Consulting Contracts"), which state that they may be "terminate[d] . . . at any time," e.g., [ECF No. 6-2 at 2 (December 21, 2009 Consultant Contract for Philicia Anglin)].  Signature also points to a partial copy of a contract that it represents is the remaining Client Contract, specifically, the Verizon – TAPFIN contract ("Purported Verizon Tapfin Contract") (collectively, with the Attached Consulting Contracts, the "Purported Assigned Contracts"), see [APA, Ex. B], which, Signature states, "expressly provides that either party can terminate the contract by giving 60-days notice before the end of any one-year renewal period," [ECF No. 5 at 2 (citing ECF No. 6-3 ¶ 2)].

Plaintiffs respond that the Court may not consider the Purported Assigned Contracts on a motion to dismiss, because they were not attached to the Complaint, incorporated into the APA, or otherwise referenced in the Complaint or central to their claims.  [ECF No. 9 at 8].  Plaintiffs also assert that the Purported Verizon Tapfin Contract is not the document Signature purports it to be and that there are "authenticity questions regarding the documents."  [Id. at 6 n.2].

On a motion under Rule 12(b)(6), courts generally may not consider materials outside the pleadings.  Fed. R. Civ. P. 12(d).  That said, courts "have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Hogan v. E. Enters./Bos. Gas, 165 F. Supp. 2d 55, 58 (D. Mass. 2001) (citations omitted).  The documents proffered by Signature are attached, along with the APA, to an

affidavit from Attorney Carnathan, which, in turn, attests to their being "true and accurate" copies.  See [ECF No. 6].

Plaintiffs assert that "[a]s outside counsel engaged to represent Signature in this litigation, Attorney Carnathan has provided no basis for the Court to believe that he has personal knowledge of any of the facts stated in his Affidavit, thereby creating authenticity questions regarding the documents submitted therewith."  [ECF No. 9 at 6 n.2].  The Court notes that an affidavit from outside counsel attesting that documents in their client's control (like the Assigned Contracts) are "true and correct" copies is a common way to establish the authenticity of documents.  Likewise, as discussed above, Plaintiffs have agreed that the Court may consider the copy of the APA that is also attached to Attorney Carnathan's affidavit, thus conceding the authenticity of that document.  Nevertheless, even without addressing the authenticity issue, the Court finds it cannot consider the Purported Assigned Contracts on a motion to dismiss.

First, as noted above, the Court may consider the APA as it is central to Plaintiff's claims.  See supra.  It is not clear, however, that the Purported Assigned Contracts are incorporated into the APA, and thus, like the APA, reviewable on a motion to dismiss based on them being central to Plaintiffs' claims.  "It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."  Spicer v. Tenet Fla. Physician Servs., LLC, 149 So. 3d 163, 166 (Fla. Dist. Ct. App. 2014) (quoting OBS Co. v. Pace Constr. Corp., 558 So. 2d 404, 406 (Fla. 1990)).[3]

> The doctrine of incorporation "requires that there must be some expression in the incorporating document . . . of an intention to be bound by the collateral document. . . . A mere reference to another document is not sufficient to

---

[3] The APA provides that it is governed by Florida law, which neither party disputes.  See [APA ¶ 8(b)]; see generally [ECF Nos. 5, 9].

incorporate that other document into a contract, particularly where the incorporating document makes no specific reference that it is 'subject to' the collateral document."

Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc., 920 So. 2d 1286, 1288 (Fla.

Dist. Ct. App. 2006) (quoting Temple Emanu–El of Greater Fort Lauderdale v. Tremarco Indus.,

Inc., 705 So. 2d 983, 984 (Fla. Dist. Ct. App. 1998)).  As such,

> [t]o incorporate by reference a collateral document, the incorporating document must (1) specifically provide "that it is subject to the incorporated [collateral] document" and (2) the collateral document to be incorporated must be "sufficiently described or referred to in the incorporating agreement" so that the intent of both parties may be ascertained.

Spicer, 149 So. 3d at 166 (quoting BGT Grp., Inc. v. Tradewinds Engine Servs., LLC, 62 So. 3d

1192, 1193 (Fla. Dist. Ct. App. 2011) (emphasis removed)).  The APA references the Assigned

Contracts, but there is no "subject to" language that suggests that the incorporating document is

"subject to" the collateral document.  See generally [APA].  By contrast, the APA expressly

provides that "the provisions of Sections 4.2 through 4.6 of [Aiello's] Employment Agreement [a

different contract] are hereby incorporated herein by reference and apply to him as if they were

set forth in full herein."  [Id. ¶ 6(f)(i)].  There is no similar language as to the Assigned

Contracts.  Further, the APA provides that "[t]his Agreement, including the exhibits and

schedules attached hereto, constitutes the entire agreement."  [Id. ¶ 8(1)].  Although referenced in

the exhibits, the Assigned Contracts are not themselves exhibits to the APA.  See [id., Exs. A–I].

Because the APA does not specifically provide that it is subject to provisions of the

Assigned Contracts, the Court cannot conclude, at this stage of the litigation, that the Assigned

Contracts are integrated into the APA.  Further, those Contracts are not referenced in the

Complaint, central to Plaintiffs' claims, or Exhibits to the APA.  For these reasons, the Court

cannot consider the Purported Assigned Contracts on a motion to dismiss.

2.   <u>Whether the APA is Terminable at Will</u>

As discussed above, Signature asserts that the APA is complete and unambiguous and that its plain language establishes that it is terminable at will.  <u>See</u> <u>supra</u>.  Plaintiffs assert that there is no express duration or termination provision, and thus Signature's threatened termination of the remaining Client and Consulting Contracts has revealed a latent ambiguity in the APA.  <u>See</u> [ECF No. 9 at 12–13].

Under Florida law, unambiguous contracts are enforced pursuant to their plain language.  <u>Armstrong v. State</u>, 985 So. 2d 1156, 1158 (Fla. Dist. Ct. App. 2008) ("Where the terms of a contract are clear and unambiguous, the express terms control.").  "The parol evidence rule provides that a complete and unambiguous written agreement may not be contradicted or modified by extrinsic evidence."  <u>Whiting v. Whiting</u>, 160 So. 3d 921, 924 (Fla. Dist. Ct. App. 2015) (citing <u>Polk v. Crittenden</u>, 537 So. 2d 156, 159 (Fla. Dist. Ct. App. 1989)).

"Ambiguities exist when a document can reasonably be interpreted as having more than one meaning."  <u>Prime Homes, Inc. v. Pine Lake, LLC</u>, 84 So. 3d 1147, 1151 (Fla. Dist. Ct. App. 2012) (citing <u>Smith v. Shelton</u>, 970 So. 2d 450, 451 (Fla. Dist. Ct. App. 2007)).  Although

> the purpose of integration clauses[, like that present in the APA, <u>see</u> APA ¶ 8(l)] "is to affirm the parties' intent to have the parol evidence rule applied to their contracts[,]" . . . "[t]he modern trend . . . is for the courts to allow parol evidence, even in cases where a contract contains an integration clause, in order . . . to explain an ambiguity in the contract."

<u>Centennial Mortg., Inc. v. SG/SC, Ltd.</u>, 772 So. 2d 564, 565 (Fla. Dist. Ct. App. 2000) (quoting <u>Outlaw v. McMichael</u>, 397 So. 2d 1009, 1011 (Fla. Dist. Ct. App. 1981)); <u>see also</u> <u>MDS (Canada), Inc. v. Rad Source Techs., Inc.</u>, 822 F. Supp. 2d 1263, 1302 (S.D. Fla. 2011) ("Notwithstanding [an integration] clause . . . , it is still permissible to admit parol evidence where there is a latent ambiguity." (citing <u>Johnson Enters. of Jacksonville v. FPL Group</u>, 162 F.3d 1290, 1309 (11th Cir. 1998)), <u>aff'd in part, question certified</u>, 720 F.3d 833 (11th Cir.

12

2013), <u>certified question answered</u>, 143 So. 3d 881 (Fla. 2014), <u>and aff'd</u>, 579 F. App'x 700 (11th Cir. 2014).

"There are two types of ambiguities—patent and latent."  <u>Prime Homes, Inc.</u>, 84 So. 3d at 1151 (citing <u>Nationwide Mut. Fire Ins. Co. v. Pollinger</u>, 42 So. 3d 890, 892 (Fla. Dist. Ct. App. 2010)).  Patent ambiguities arise when the terms of the contract themselves are unclear on their face.  <u>Id.</u>  Alternatively, "[a] latent ambiguity exists where the language of an agreement is facially clear[,] but an extrinsic fact or extraneous circumstance creates a need for interpretation or reveals an insufficiency in the contract of a failure to specify the rights or duties of the parties in certain situations."  <u>Hollinger v. Hollinger</u>, 292 So. 3d 537, 542 (Fla. Dist. Ct. App. 2020).  Said differently, "[a] latent ambiguity . . . exists '[i]f a contract fails to specify the rights or duties of the parties under certain conditions or in certain situations, [and] the occurrence of such condition or situation reveals an insufficiency in the contract not apparent from the face of the document.'"  <u>Metro Dev. Grp., L.L.C. v. 3D-C & C, Inc.</u>, 941 So. 2d 11, 14 (Fla. Dist. Ct. App. 2006) (quoting <u>Hunt v. First Nat'l Bank of Tampa</u>, 381 So. 2d 1194, 1197 (Fla. Dist. Ct. App. 1980)).  However, "[a] contract's silence as to an issue does not create a latent ambiguity where there is applicable law on that issue."  <u>People's Tr. Ins. Co. v. Lamolli</u>, 352 So. 3d 890, 894 (Fla. Dist. Ct. App. 2022).

Focusing only on the APA itself (not the Assigned Contracts): the only language Signature points to is a "Projected End Date" of December 31, 2017 for some of the Consulting Contracts, listed in Exhibit A of the APA.  [ECF No. 5 at 4 (citing APA, Ex. A)].  Signature argues that this shows that "Plaintiffs have enjoyed a much longer stream of income than they had any right to expect when they executed the APA in 2017."  [<u>Id.</u>].  Whether or not this is true, the Court finds that this "projection" alone does not provide a clear termination date for the

APA.  Plaintiffs, on the other hand, point to the fact that the APA was intended to provide an ongoing income stream as part of the purchase price of the Assigned Contracts and other assets, seemingly suggesting that the parties would not have intended that Signature could terminate that income stream at will.  [ECF No. 9 at 2]; see also [APA ¶ 2(d)].  After considering the arguments advanced by both sides, the Court concludes that there is no express duration or termination provision in the APA, and that it is not otherwise clear, based on its plain language, that the APA is terminable at will.

Pursuant to Florida law, "[t]he general rule is that a contract which contains no express provision as to duration, or which is to remain in effect for an indefinite period of time, is not deemed to be perpetual, but instead may be terminated at will."  Gort v. Gort, 185 So. 3d 607, 613 (Fla. Dist. Ct. App. 2016) (quoting Perri v. Byrd, 436 So. 2d 359, 361 (Fla. Dist. Ct. App. 1983)); cf. Gulf Cities Gas Corp. v. Tangelo Park Serv. Co., 253 So. 2d 744, 748 (Fla. Dist. Ct. App. 1971) ("In our opinion the contract before the court was 'silent' as to the duration of the defendant's duty to provide gas to Tangelo Park Subdivision.  In that circumstance the normal rule is that the duty is terminable at will." (citations omitted)).  However, in evaluating whether this presumption applies, the Florida Supreme Court has held that "court[s] should determine the intent of the parties by examining the surrounding circumstances and by reasonably construing the agreement as a whole."  Gort, 185 So. 3d at 613 (quoting City of Homestead v. Beard, 600 So. 2d 450, 453 (Fla. 1992)) (internal quotations omitted).  "If a period of duration can be inferred from the nature of a contract and the circumstances surrounding its execution, the contract is not terminable at will and a court should give effect to the manifest intent of the parties."  City of Homestead, 600 So. 2d at 453–54 (declining to construe an agreement without "an express statement as to duration" to be terminable at will).

As such, per Florida law, the APA may either follow the "general rule" that contracts lacking a duration clause are "terminable at will," Perri, 436 So. 2d at 361, or the parties may have intended another specific period of duration or termination date.  To determine which is the proper construction of the APA, the Court must evaluate whether a "period of duration can be inferred from the nature of [the] contract and the circumstances surrounding its execution[.]" City of Homestead, 600 So. 2d at 453.  Because the proper construction is not clear from the nature of the contract alone, there is an ambiguity in the APA which cannot be resolved by a motion to dismiss.  See, e.g., Sonoiki v. Harvard Univ., 37 F.4th 691, 713 (1st Cir. 2022) ("[A]mbiguities in a contract are not to be resolved through a motion to dismiss[.]"); Kolbe v. BAC Home Loans Servicing, LP, 738 F.3d 432, 440 n.6 (1st Cir. 2013) ("[W]hen an individually tailored contract is ambiguous, it is inappropriate for a court to resolve a contract dispute on the pleadings, because the outcome will depend on extrinsic evidence that will surface at discovery or at trial.").  Signature's motion to dismiss is therefore DENIED.[4]

IV.     **CONCLUSION**

Defendant's Motion to Dismiss, [ECF No. 4], is DENIED.

     **SO ORDERED.**

March 25, 2024                          */s/ Allison D. Burroughs*
                                        ALLISON D. BURROUGHS
                                        U.S. DISTRICT JUDGE

---

[4] Because the Court cannot determine the intended duration or termination of the APA without discovery, it does not evaluate whether the Email is extrinsic evidence of the parties' intention that the APA would only terminate after the Consultants resigned.  At this stage of the litigation, the Court also cannot address Signature's arguments that (1) the Email does not provide evidence of the parties' intent as to the APA but constitutes a separate oral agreement by Signature to employ the Consultants until they resign, or that (2) such an oral agreement would be barred by Florida's Statute of Frauds.  [ECF No. 5 at 6].