## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————————— ) | |
| **MARK AIELLO, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **23-11930-BEM** |
| ) | |
| **SIGNATURE COMMERCIAL** ) | |
| **SOLUTIONS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ———————————————————— ) | |

### MEMORANDUM AND ORDER ON
### <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

**MURPHY, J.**

In this action, Plaintiffs Mark Aiello and Cyber 360 Inc. (collectively, "Aiello") allege that

Defendant Signature Commercial Solutions, LLC ("Signature") breached a 2017 Asset Purchase

Agreement ("APA") by terminating employee and client contracts (the "collateral agreements")

that had provided a revenue stream for Aiello while in operation.  *See generally* Dkt. 15 (Plaintiffs'

Amended Complaint, or "Compl.").  Moving for summary judgment, Dkt. 30, Signature argues

that, under the terms of the APA and its collateral agreements, Signature was free to terminate

those contracts any time it wanted.  *See* Dkt. 31 ("Memo.") at 1–2.

This argument squarely contradicts the court's prior ruling on Signature's motion to

dismiss.[1]  *See Aiello v. Signature Com. Sols., Inc.*, 2024 WL 1258620 (D. Mass. Mar. 25, 2024).

---

[1] This case was transferred to the undersigned on January 27, 2025, following the undersigned's confirmation as a newly appointed judicial officer.

In that posture, Judge Burroughs found that the collateral agreements were not incorporated into the APA and that the APA was ambiguous as to Signature's right to terminate.[2]  *Id.* at *6–7.

Of course, the Court is free to reconsider this decision now upon an expanded record. *Bethlehem Steel Exp. Corp. v. Redondo Const. Corp.*, 140 F.3d 319, 321 (1st Cir. 1998).  However, Signature provides scant reason to do so.  For this and the other reasons stated herein, Signature's motion is DENIED.

## I.    <u>Relevant Background</u>

On or about March 31, 2017, Signature and Aiello entered into the APA.  Dkt. 39 (Plaintiff's Statement of Material Facts, or "PSOF") ¶ 31.[3]  Under the APA, Aiello assigned to Signature its "right, title and interest in, to and under" certain assets, including the collateral agreements.  *Id.* ¶¶ 33–34.  As partial consideration, Signature agreed to make "Net Spread" payments to Aiello, based on Signature's income from the collateral agreements.  *Id.* ¶ 40.

In 2022, Signature determined that it wanted to terminate the collateral agreements. *Id.* ¶ 53.  In late 2023, it did so.  *Id.* ¶ 54.  The collateral agreements all expressly provide for Signature's right to terminate.  *Id.* ¶¶ 18, 26.

On June 29, 2023, Aiello filed this action in Massachusetts Superior Court, Norfolk County.  Dkt. 1 at 8.  On August 23, 2023, Signature removed to federal court.  *Id.* at 1.  In its Amended Complaint, Aiello alleges that Signature breached the APA by terminating the collateral

---

[2] Signature misreads the court's prior ruling as hinging on the disputed authenticity of certain documents purporting to represent the collateral agreements.  *See* Dkt. 42 at 2 n.3.  Rather, the court determined that it did not need to resolve the authenticity issue precisely because the collateral agreements were not incorporated into the APA and therefore could not be considered on a motion to dismiss.  *Aiello*, 2024 WL 1258620, at *5.

[3] Citations to the PSOF refer to the facts as admitted or qualified by Aiello.  *See* Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

agreements, thereby cutting off Aiello's Net Spread payments, Compl. ¶¶ 40–46, and that Signature's course of conduct in doing so constituted unfair and deceptive business practices in violation of Mass. Gen. Laws c. 93A, *id.* ¶¶ 47–56.   On March 25, 2024, the Court denied Signature's motion to dismiss.  Dkt. 12; *Aiello*, 2024 WL 1258620.  On March 31, 2025, Signature moved for summary judgment.  Dkt. 30.  Following briefing and oral argument, the Court took Signature's motion under advisement.  Dkts. 30–33, 38–43.

## II.    <u>Legal Standard</u>

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)) (internal quotes omitted).

Under Florida law, interpretation of an unambiguous contract is a question of law and so can be resolved on summary judgment.[4] *John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 F. App'x 396, 398–99 (11th Cir. 2011) (citing *PNC Bank, N.A. v. Progressive Emp'r Servs. II*, 55 So. 3d 655, 658 (Fla. Dist. Ct. App. 2011)).  However, "[w]hen a contract is ambiguous, an

---

[4] The parties agree that the APA is governed by Florida law.  *See* Memo. at 7 n.3; Dkt. 38 ("Opp.") at 15.

issue of fact is created that cannot be resolved by summary judgment." *Id.* at 398 (quoting *Talbott v. First Bank Fla.*, 59 So. 3d 243, 244 (Fla. Dist. Ct. App. 2011)).

## III.    Discussion

### A.    Breach of Contract

Signature's primary argument is that the APA granted to Signature all rights and obligations under the collateral agreements and that, since those contracts could be terminated at will according to their own terms, the APA must allow the same.  Memo. at 8–10.

In its opening brief, Signature frames it just that simply.  *See* Memo. at 8 ("There can be no question . . . that, pursuant to the APA, the entirety of the [collateral agreements] were transferred from Plaintiffs to Signature []. . . . The relevant question for this Court, then, is what termination rights [Aiello] had under the [collateral agreements].").  Stated thus, however, it is logical fallacy.  That there might be no recourse for termination under the collateral agreements does not mean that there can be no recourse under the APA.

In reply, Signature adds an additional analytic step, arguing that the collateral agreements were *incorporated* into the APA.  *See* Dkt. 42 ("Reply") at 1–2.  As a general matter, arguments left out of a moving party's opening brief are deemed waived.  *See Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010).[5]  In this instance, the argument also fails on the merits.  Signature states that it "could not be more clear that Signature [] intended to be bound by the" collateral agreements and that the collateral agreements "were the

---

[5] This rule is more than a procedural "gotcha."  Rather, it guarantees for opposing parties a fair opportunity to respond to moving parties' actual arguments, and it prevents courts from having to rule improvidently on issues not fulsomely briefed.  *See Noonan*, 723 F. Supp. 2d at 349 n.130.  Here, Signature's omission was particularly noticeable because Signature lost on the issue of the collateral agreements' incorporation at the motion to dismiss stage, *Aiello*, 2024 WL 1258620, at *5–6, and so might have been expected to come back with a redoubled showing.  Instead, Signature attempted to sidestep the issue, which it certainly had the right to do, but Aiello cannot simultaneously be expected to shadowbox against Signature's shots not taken.

very subject of the APA." Reply at 2. This misses the point. Of course, Signature is bound by the collateral agreements—the relevant question is whether *the APA* is bound by the collateral agreements. *See Azure Coll., Inc. v. Bank of Am., N.A.*, 629 F. Supp. 3d 1200, 1207 (S.D. Fla. 2022) ("A contract incorporates another document by reference if ***the contract*** [] specifically provides that ***it*** is subject to the incorporated collateral document." (emphases added)). The fact that the collateral agreements were "the subject" of the APA is, in and of itself, insufficient. *See id.*; *see also Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1318 (S.D. Fla. 2009) ("As a matter of law, the reference to the underlying contract in the ['separate contract'] does not incorporate the terms of the underlying contract into the ['separate contract']."), *aff'd*, 395 F. App'x 583 (11th Cir. 2010).

Perhaps sensing that its incorporation argument would not carry the day, Signature pivots—again, in its reply brief—to an entirely new textual basis for opposing the breach of contract claim. *See* Reply at 3–4. Specifically, Signature argues that the APA's "Net Spread" provision, tying payment to the performance of work under the collateral agreements, functions as a de facto durational limit on those payments, without regard for how or why the underlying work comes to cease. *Id*. at 3–4. Again, for failing to make this argument in such a way that Aiello might properly respond, Signature has waived it for purposes of this motion. *See Noonan*, 723 F. Supp. 2d at 349 & n.130.

However, even if the Court were to adopt Signature's framing, it would still deny summary judgment.[6] That is so because Signature's reading of the Net Spread provision would vest Signature "with a degree of discretion in performance sufficient to deprive [Aiello] of a substantial

---

[6] To be clear, the Court cannot and does not decide the meaning of the Net Spread provision (or any other part of the APA) without proper briefing from both parties.

proportion of the [APA's] value," *i.e.*, the power to cease Net Spread payments by terminating the underlying collateral agreements. *See Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097–98 (Fla. Dist. Ct. App. 1999) (quoting *Centronics v. Genicom Corp.*, 562 A.2d 187, 193 (N.H. 1989)) (decided under Florida law). As such, the Net Spread provision would be governed by the "implied covenant of good faith, fair dealing and commercial reasonableness." *Id.*; *see also Burger King Corp. v. Broad St. Licensing Grp., LLC*, 469 F. App'x 819, 821–22 (11th Cir. 2012) (decided under Florida law) (finding contract term that gave the defendant the right to terminate underlying contracts on which the plaintiff's payments were based was governed by the implied covenant). Determining whether Signature violated that standard would require settling disputed issues of fact, *see, e.g.*, PSOF ¶ 52, precluding summary judgment.[7]

> ### B.     Mass. Gen. Laws c. 93A

Based on the same course of dealing, Aiello also alleges that Signature committed unfair and deceptive business acts in violation of Mass. Gen. Laws c. 93A ("93A"). Compl. ¶¶ 47–56. Signature likewise moves for summary judgment on that count, Dkt. 30, and makes five supporting legal arguments—none of which prevails.

*First*, Signature argues that the APA's choice-of-law provision precludes any claim under Massachusetts law. Memo. at 16. Whether a choice-of-law provision waives the right to make

---

[7] Signature suggests that, as a matter of law, its six years of Net Spread payments necessarily satisfies any good-faith obligation. Reply at 3 n.6. The Court sees no reasoned basis for this conclusion.

claims under the law of another state is determined by the scope of that provision.[8]  *Kleiner v. Cengage Learning Holdings II, Inc.*, 66 F.4th 28, 31 (1st Cir. 2023).  Here, the provision states that "[t]he Agreement shall be governed in all respects by the laws of the State of Florida without regard to conflicts-of-laws principles."  Dkt. 33-1 at 348.  "Agreement" is defined in the APA as "[t]his **ASSET PURCHASE AGREEMENT**."  *Id.* at 331 (emphasis in original).  The Court "therefore conclude[s] that 'Agreement' capitalized refers to what the parties signed."  *See Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, 390 F. App'x 1, 2 (1st Cir. 2010) (finding that a similar choice-of-law provision did not preclude a claim under a Georgia statute).  Both the First Circuit and the Massachusetts Supreme Judicial Court have interpreted similar language—which, on its own terms, governs only "what the parties signed," *id.*—to permit claims under 93A.[9]  *Kleiner*, 66 F.4th at 32 ("The clause at issue in this case states only that '[t]his Agreement shall be construed and governed' according to New York law.  It does not otherwise select any state's law as

---

[8] Both Signature and Aiello also cite, among other cases, *Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Co.*, 986 F.2d 607 (1st Cir. 1993), for the proposition that whether a 93A claim is precluded by a choice-of-law provision also depends on whether the 93A claim sounds primarily in contract or in tort. Memo. at 16; Opp. at 17. However, this 93A tort-versus-contract distinction is difficult to square with the Massachusetts Supreme Judicial Court's more recent decision in *H1 Lincoln, Inc. v. South Washington St., LLC*, 489 Mass. 1 (2022), disposing of that distinction in the context of limitation-on-liability clauses. *See H1 Lincoln*, 489 Mass. at 24 ("This court has not, however, adopted the tort versus contract distinction employed by the Appeals Court to determine the enforceability of limitation of liability provisions in c. 93A, § 11, actions. . . . [T]he relief available under c. 93A is sui generis, being neither wholly tortious nor wholly contractual in nature. Hence, a cause of action under c. 93A is not dependent on traditional tort or contract law concepts for its definition." (internal brackets, quotes, and citations omitted)). Indeed, the *H1 Lincoln* court cast substantial doubt on the reasoning of its earlier decision in *Canal Electric Co. v. Westinghouse Electric Corp.*, 406 Mass. 369 (1990), upon which the First Circuit relied in *Northeast Data*. *H1 Lincoln*, 489 Mass. at 23–25; *Northeast Data*, 986 F.2d at 610. In reforming *Canal*, the *H1 Lincoln* court highlighted the expansive scope of the waiver at issue in that case. *H1 Lincoln*, 489 Mass. at 23 n.15. Likewise, in *Kleiner*, the First Circuit cited *Northeast Data* but elided its 93A tort-versus-contract analysis and ultimately decided the case entirely on the scope of the choice-of-law provision. *Kleiner*, 66 F.4th at 31. For these reasons, taking its cue from the Supreme Judicial Court, this Court will decline to analyze whether Aiello's 93A allegations sound more in tort or in contract, *see H1 Lincoln*, 489 Mass. at 24, and will follow the First Circuit's recent example in deciding the issue based on the scope of the provision, *Kleiner*, 66 F.4th at 31–33.

[9] The Court assumes without deciding that the parties are correct in relying on the choice-of-law principles of the forum state—here, Massachusetts—to determine the scope of the choice-of-law provision. *See Kleiner*, 66 F.4th at 31 (making the same assumption); Memo. at 16 (citing cases interpreting scope under Massachusetts law); Opp. at 16–18 (same).

governing the parties' rights and obligations that are created by statute. . . .  Therefore, the agreement does not suggest that the parties agreed that New York law would govern the adjudication of a claim that Cengage breached a statutory duty imposed by Massachusetts law." (brackets in original)); *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 580 n.9 (1995) ("The agreement does not state that the rights of the parties are to be governed by California law but only that the agreement is to be governed and construed by California law.  The choice of law clause does not purport to bar the application of G.L. c. 93A to the parties' dealings in Massachusetts.").[10]   Accordingly, the 93A claim is not barred by the APA's choice-of-law provision.

*Second*, Signature argues that the 93A claim must fail if the breach of contract claim fails. Memo. at 17–18.  But the breach of contract claim survives, so Signature's argument is moot.

*Third*, Signature wrongly argues that a 93A claim must assert damages separate and apart from what could be recovered under a breach of contract theory.  Memo. at 18.  "While a claimant cannot recover duplicate damages for the same conduct under both c. 93A and another cause of action, that does not mean that damages for the two claims based on the same conduct might not be the same for both causes of action."  *Packaging Partners, LLC v. Pilothouse Packaging, LLC*, 88 Mass. App. Ct. 1106, 2015 WL 5664829, at *2 & n.6 (2015) ("In other words, the judge could have awarded nothing on the breach of contract claim, and instead awarded the lost profits as damages from the c. 93A claim and doubled that amount because Pilothouse's breach of contract and unfair or deceptive acts caused Packaging Partners the same damages.").  "The same acts that are a breach of contract may govern a determination that the defendant violated c. 93A, and c. 93A

---

[10] Aiello further convincingly points, by contrast, to the APA's forum-selection clause which expressly includes a broader swath of claims "arising out of or relating to [the] Agreement."  Dkt. 33-1 at 348; *see also Vertex*, 390 Fed. Appx. at 2–3 (relying in part on a similar observation).

damages may be in the same amount as contract damages." *Burns v. Crevo*, 63 Mass. App. Ct. 1107, 2005 WL 673352, at *1 (2005) (internal citation omitted); *see also Linthicum v. Archambault*, 379 Mass. 381, 383 (1979) ("[I]t was error for the trial judge to refuse relief under c. 93A because it was unnecessary to secure adequate relief for said plaintiff." (internal quotes omitted)). In other words, Signature's alleged breach may itself be the 93A violation and may therefore provide for the same damages.[11]

*Fourth* and *Fifth*, Signature argues that the 93A claim cannot encompass allegations that Signature's in-house counsel attempted to extort Aiello into dropping the lawsuit by threatening to withhold payments undisputedly due. Memo. at 18–20. Signature focuses on the fact that the specific individual alleged to have contacted Aiello about this plan was a lawyer and therefore claims that the litigation privilege immunizes all acts and statements that lawyer made relating to the lawsuit. *Id.* at 18–19. But Aiello is not suing an attorney but rather Signature, a regular party. *Cf. Bassichis v. Flores*, 490 Mass. 143, 158 (2022) (holding that an attorney could not be held personally liable for acts or statements made during litigation); *id.* at 154–55 ("The litigation privilege thus serves to encourage robust representation of clients and to protect the vast majority of attorneys who are innocent of wrongdoing from harassment in the form of retaliatory litigation by litigants dissatisfied with the outcome of a prior proceeding." (internal quotes omitted)). Against a regular party, the litigation privilege is more limited and "does not attach . . . where it is not the statements themselves that are said to be actionable,"[12] but rather "fairly can be viewed as part of the conduct of extortion" or other misconduct. *Haverhill Stem LLC v. Jennings*, 99 Mass.

---

[11] Aiello separately argues that its damages are not entirely coextensive between the two claims. Opp. at 19–20. The Court need not reach this issue.

[12] For example, defamatory statements are immunized as actionable in and of themselves. *Gillette Co. v. Provost*, 91 Mass. App. Ct. 133, 140–41 (2017).

App. Ct. 626, 636–37 (2021) (quoting *Gillette Co. v. Provost*, 91 Mass. App. Ct. 133, 141 (2017));[13] *see also Haverhill Stem LLC v. Jennings*, 102 Mass. App. Ct. 1121, 2023 WL 3555117, at *4 (confirming that its decision was undisturbed by *Bassichis*), *review denied*, 492 Mass. 1106 (2023). Here, the theoretically actionable conduct is extortion, and only through that lens do the alleged statements become actionable. *Cf. Gillette*, 91 Mass. App. Ct. at 141. Accordingly, the litigation privilege does not apply.

Finally, Signature argues that, by the time Aiello filed suit, the parties were no longer engaged in commerce and that, therefore, Aiello cannot rely on 93A to create liability for those post-filing acts, *i.e.*, the alleged extortion. Memo. at 19–20. The Court disagrees. The alleged communications concerned payments due as a result of the parties' commercial dealings under the APA. Thus, the alleged communications flowed directly out of those commercial dealings, and the parties' relationship maintained its commercial character, notwithstanding the filing of litigation. Massachusetts courts have repeatedly held that 93A violations can occur or continue in the context of litigation. Indeed, "there is little doubt that a course of conduct beginning before litigation and continuing unabated, thereafter may ['rise to the level of a Chapter 93A violation']." *Rawan v. Cont'l Cas. Co.*, 483 Mass. 654, 674 n.9 (2019) (quoting *Trenwick America Reins. Corp. v. IRC, Inc.*, 764 F. Supp. 2d 274, 305 (D. Mass. 2011) (finding defendant liable under 93A for "disavow[ing] [a] Contract in bad faith, rais[ing] a specious defense, [and] str[inging] the plaintiffs

---

[13] As the *Gillette* court rightly pointed out, holding otherwise would "eviscerate" longstanding causes of action such as abuse of process and malicious prosecution. *Gillette Co.*, 91 Mass. App. Ct. at 142.

along, pre-and post-litigation, all in a bad faith effort to avoid payment")).[14]  Accordingly, the post-filing allegations are properly claimed under the commercial protections of 93A.

For the foregoing reasons, Signature's motion for summary judgment is DENIED.

**So Ordered.**

/s/ Brian E. Murphy
_____
Brian E. Murphy
Dated:  May 16, 2025                    Judge, United States District Court

---

[14] Signature cites cases concerning the (non-commercial) relationship between a party and its opposing party's *outside counsel*.  *See* Memo. at 19 (citing *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456 (1997), and *Tomaselli v. Beaulieu*, 2010 WL 2105347 (D. Mass. May 7, 2010)); *Tetrault*, 425 Mass. at 457; *Tomaselli*, 2010 WL 2105347, at *8.  Again, Aiello has sued Signature, not its counsel.  Moreover, to the extent Signature's allegations pertain to any attorney, it is Signature's *in-house* counsel, *i.e.*, a direct employee of the company with whom Aiello had a commercial relationship.  It would be strange if a party could remove its otherwise clearly commercial acts from the ambit of 93A simply by sending a barred employee.